## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

DURWYN TALLEY,                    )
   Plaintiff,                    )
                                        )
   vs.                    )          Case No. 21-1047
                                          )
WEXFORD MEDICAL DIRECTOR, et. al. )
   Defendants                    )

### MERIT REVIEW ORDER

HAROLD A. BAKER, U.S. District Judge:

This cause is before the Court for merit review of Plaintiff's complaint and consideration of his motions for appointment of counsel, leave to proceed *in forma pauperis* (IFP), and for emergency injunctive relief. [1, 2, 5, 6].

### I. BACKGROUND

Plaintiff, a *pro se* prisoner, has filed approximately 35 lawsuits and has accumulated three strikes pursuant to 28 U.S.C. §1915(g).  Therefore, Plaintiff can only proceed IFP for claims alleging he is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

In addition, the Seventh Circuit has issued an order directing clerks to return unfiled any papers submitted by the Plaintiff unless he pays all outstanding fees. However, this order does not apply to any suit in which the Plaintiff alleges imminent danger of serious physical injury as determined by the District Court. *See Talley v. Jennings*, Case No. 19-1204, [42],(July 28, 2020 Amended Order).

Courts must construe the imminent danger exception narrowly as "an escape hatch for genuine emergencies," where "time is pressing" and "a threat ...is real and proximate." *Heimermann v Litxcher*, 337 F3d 781 (7th Cir. 2003) *citing Lewis v.Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002).  Furthermore, even if a plaintiff adequately pleads imminent danger as to one claim, he may not "piggyback" other claims which do not establish imminent danger of a serious physical injury. *See Bennett v Moore*, 2009 WL 1871856 at 2 (S.D. Ill. June 26, 2009); *see also Godwin v. Tidquist*, 2010 WL 4941616 (W.D.Wis. November 30, 2010)(plaintiff only allowed to proceed with claim which meets imminent danger exception); *Peterson v. Thatcher*, 2009 WL 2341978 at 3 (N.D.Ind.,July 27, 2009) (§ 1915(g) mandates the court deny the plaintiff leave to proceed *in forma pauperis* on those claims for which he is not in imminent danger).

Plaintiff has alleged imminent danger in four other lawsuits currently pending in the Central District. *See Talley v. Renzi*, Case No. 20-1159; *Talley v Jeffries*, Case No. 20-1433; *Talley v Doe #1*, Case No. 20-1438; and *Talley v McGorisk*, Case No. 20-1455.  In the first case, the Seventh Circuit Court of Appeals sent the case back to the District Court to determine whether Plaintiff had alleged imminent danger. The Seventh Circuit noted Plaintiff's "claim of danger will not be automatically accepted." *See Talley v. Renzi*, Case No. 20-1159, [20]. In the second case, the District Court found Plaintiff had not demonstrated imminent danger and Plaintiff was given additional time to pay the filing fee. *See Talley v Jeffries*, Case No. 20-1433 (JBM).  In the third case, Defendants are currently challenging Plaintiff's assertion of imminent danger. *Talley v McGorisk*, Case No. 20-1455; *see also* T*aylor v. Watkins*, 623 F.3d 483, 485 (7th Cir. 2010)("when a

defendant contests a plaintiff's claims of imminent danger, a court must act to resolve the conflict."). The final case awaits merit review of Plaintiff's allegations. *See Talley v Doe #1*, Case No. 20-1438 (dental care).

## II. MERIT REVIEW

In addition to considering whether Plaintiff has alleged imminent danger, the Court must also consider the basis of Plaintiff's allegations. The Court is required by 28 U.S.C. §1915A to "screen" the Plaintiff's complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

Plaintiff claims 12 Defendants violated his constitutional rights at Pontiac Correctional Center including  Wexford Health Sources' Medical Director; Medical Director Andrew Tilden; University of Illinois at Chicago (UIC) Eye Specialists Dr. Phillips and Rebecca Sawan; Major Glendal French; Wardens Teri Kennedy, Leonta Jackson, and Cox; Internal Affairs Investigator Joseph Jennings; Major Leininger; Nurse Cheryl Hansen; and Illinois Department of Corrections Director (IDOC) Director Rob Jeffries.

Plaintiff transferred to Pontiac on March 7, 2019 and says his medical records included a referral to a glaucoma specialist for a "painful and severely swollen bleb" on his right eye. (Comp, p. 9).  The Court notes a common surgery to reduce eye pressure

associated with glaucoma involves the creation of a small bubble or bleb for drainage.[1] Plaintiff confirms he had glaucoma surgery in 2009 which resulted in the small bleb on his right eye. However, Plaintiff claims it began to swell. Plaintiff further claims he needs corrective surgery, or at the least, pain medication and constant monitoring.

Plaintiff informed Defendant Nurse Hansen about the referral to an eye specialist when he arrived at Pontiac. Nonetheless, Plaintiff claims the referral was ignored for some time due to retaliation by Wexford and IDOC staff. Plaintiff provides no further factual basis for this claim.  His vague allegation does not state a retaliation claim.

Plaintiff met with an eye doctor at Pontiac, Dr. John Doe, on an unspecified date. The doctor wrote a prescription for eyeglasses which Plaintiff claims was "deliberately wrong" and refused pain medication "just as other eye doctors at other prisons had done in order to punish (Plaintiff) for filing grievances and making complaints." (Comp, p. 9).

In May of 2019, the John Doe eye doctor referred Plaintiff to a glaucoma specialist. Plaintiff told the doctor his eyeglass prescription was wrong, but the doctor took no action.

Plaintiff also complained to Defendants Warden Kennedy, Major Leininger, and Dr. Tilden about the need to see a specialist for his eye pain and the need for artificial tear drops. Plaintiff does not state when or how he complained to the Defendants.

---

[1] All About Vision, Glaucoma Surgery, https://www.allaboutvision.com/conditions/glaucoma-surgery (last visited February 8, 2021)

Plaintiff also complained to Defendant Major French who told Plaintiff perhaps his problems would go away if he were to write to Defendant IDOC Internal Affairs Investigator Jennings.  Plaintiff says he had more than 10 pending lawsuits against Defendant Jennings at the time, so Plaintiff assumed Defendant Jennings was involved in the denial of additional eye care.

Plaintiff next claims Dr. John Doe "put several refusals" in his medical file apparently anticipating a future lawsuit. (Comp., p. 10).  For instance, the medical record indicates Plaintiff refused to see a UIC eye specialist on September 19, 2019.

Finally, on September 27, 2019, Plaintiff met with Defendant UIC eye specialists Dr. Phillips and Sawan. Plaintiff does not clarify what role Defendant Sawan played in his medical care. Plaintiff admits he was informed Dr. Phillips would perform any needed surgery and Dr. Phillips would make any decisions regarding medical care for Plaintiff.  Plaintiff again asked for pain medication, but his request was denied.

Plaintiff has attached the relevant medical record from both his referral and the UIC appointment. (Comp, p. 15).  The initial referral on May 7, 2019 indicates it is not urgent, but instead for an eye pressure check.  On September 27, 2019, the eye specialists recommend Plaintiff begin using artificial tears and ointment at nighttime with a repeat examination in six weeks.  There is no indication surgery or any other treatment was recommended. (Comp, p. 15).  Defendant Dr. Tilden approved the eye specialists' recommendations on September 27, 2019.

The last medical record provided by Plaintiff notes he was scheduled for another glaucoma appointment the first week of November in 2019.  However, on November 3,

2019 the visit was canceled with plans to reschedule due to a level one lockdown at the facility. (Comp., p. 16). Plaintiff maintains he should have been referred back to the eye doctor sooner, but it was delayed in order to "punish" him. (Comp., p. 11). Nonetheless, Plaintiff admits he was told the medical visit was delayed due to a lockdown at his correctional center.

It is very difficult to discern from Plaintiff's complaint whether the September 2019 visit was the last visit with UIC eye specialists, or whether he saw Defendant Sawan a second time later in November of 2019. Either way, Plaintiff complained the UIC medical team had not obtained medical records from his previous surgery, and therefore he asked for a second opinion. Defendant Sawan said they could possibly schedule another appointment in two weeks, but any potential surgery would be delayed until January of 2020.

Plaintiff did not see eye specialists during the next two months, but the medical record indicates Plaintiff refused to abide by his medical writs. Plaintiff claims this record is false.

Plaintiff did see an eye doctor at Pontiac in January or February of 2020. It is unclear if this was the same Dr. John Doe, or a different Pontiac Correctional Center eye doctor. The eye doctor said there was no medical order for Plaintiff to return to see any UIC eye specialists. Plaintiff claims the Pontiac doctor somehow conspired with UIC medical providers, Defendants Dr. Phillips and Sawan, to prevent him from returning for additional care. The basis of this claim is unclear.

Plaintiff says Major Leininger "was aware" of the problems with his eye care, but he has failed to take any action. (Comp., p. 13).  Plaintiff also complained to Defendant Wardens Jackson and Cox, but they took no action.  Plaintiff further maintains Wexford's Medical Director "is aware" of his need for eye care. (Comp., p. 13). Finally, Plaintiff says he has complained numerous times to Nurse Hansen, but she has not done anything to help him.

Plaintiff maintains he needs surgery, eyeglasses, and pain medication.  Plaintiff further maintains his eye pressure must be monitored and he must see an eye specialist at least two times a year.  Plaintiff complains the bleb is getting bigger, he suffers in pain, and he believes the bleb on his eye has resulted in nose bleeds.

As previously noted, Plaintiff may *only* proceed IFP with claims which clearly alleged an imminent danger of serious physical injury.  "Allegations of past harm do not suffice; the harm must be imminent or occurring at the time the complaint is filed." *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003).  The majority of Plaintiff's complaint appears to focus on past misconduct.

For instance, Plaintiff admits he met with UIC specialists concerning his eye condition in September of 2019.  Therefore, any claims involving delays in sending him to an outside specialist prior to September of 2019 involve past harms which do not demonstrate imminent danger at the time Plaintiff filed his complaint in January of 2021. *See Scott v. Lucas*, 2020 WL 6363687, at *1 (E.D.Wis. Oct, 29, 2020)(allegations of past deliberate indifference to a serious medical need fail to demonstrate imminent danger); *Scott v. G.B.C.I.,* 2018 WL 1124211, at *1 (W.D.Wis. Feb 26, 2018)("allegations

concerning …past delays in receiving dental care … do not support a finding of imminent danger."); *Conway v. Randolph County Illinois*, 2017 WL 5007781, at *1 (S.D.Ill. Nov. 2, 2017)(inmate received surgery, so claims involving delays in medical care *before* surgery failed to demonstrate imminent danger)(emphasis added).

If Plaintiff wishes to proceed IFP, he must limit his claims concerning the need to see an eye specialist and the need for additional treatment to events which occurred during his visit with eye specialist and any lack of care after that visit.  Therefore, it is important for Plaintiff to clearly state the approximate date he last met with UIC eye specialists and the approximate date he last met with a Pontiac eye doctor.  Plaintiff should also clarify if he is referring to one eye doctor at Pontiac or more than one, and what role Defendant Sawan played in his medical care if Defendant Dr. Phillips was responsible for determining appropriate care.

In addition, Plaintiff should clearly state what treatment he needed that he was not receiving and whether that treatment was recommended by any medical provider. For instance, Plaintiff claims he needs surgery or pain medication, but none of the medical records Plaintiff provided mention a need for either. Plaintiff also admits no doctor or specialist at any facility believed pain medication was appropriate.  Plaintiff is reminded a mere disagreement with a physician's chosen course of treatment is not deliberate indifference. S*ee Snipes v. DeTella,* 95 F.3d 586, 591 (7th Cir. 1996).

Further, Plaintiff includes vague claims alleging several IDOC staff members knew about his need for additional eye care, but they failed to intervene.  Plaintiff does not clarify how most of these Defendants had reason to know about his eye condition.

8

Furthermore, none of these individuals were directly responsible for providing medical or eye care. *See Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006); *Greeno v. Daley*, 414 F.3d 645, 655-56 (7th Cir.2005).

Furthermore, Plaintiff is reminded if he wishes to proceed IFP, any claim against any Defendant must be limited to those alleging imminent danger of serious physical injury. Plaintiff is well-aware he "adequately pleads imminent danger as to one claim, he may not piggyback onto that, other claims in which there is no imminent danger of serious physical injury." *Talley v. Jennings*, 2019 WL 3307036, at *1 (C.D.Ill. July 23, 2019) (internal citation omitted). In the alternative, Plaintiff may choose to pay the filing fee in full and his claims would not be limited to imminent danger.

In order to better understand Plaintiff's allegations and determine whether he may proceed IFP, the Court will allow Plaintiff one opportunity to file an amended complaint which addresses the deficiencies noted in this order. Plaintiffs' original complaint is dismissed as a violation of Federal Rule of Civil Procedure 8 which calls for "a short and plain statement of the claim showing the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

The Court will allow Plaintiff 21 days to file his amended complaint. The amended complaint must stand complete on its own and must not refer to any previous document filed in this case. Plaintiff must include all intended claims and Defendants and must address the deficiencies and confusion noted in his previous complaint. Plaintiffs' amended complaint should also include numbered paragraphs. Each

paragraph should clearly allege what happened, when it happened, and who was involved.

Finally, Plaintiff is again admonished he may ONLY proceed IFP with claims alleging imminent danger of serious physical harm which was occurring *at the time he filed his complaint*.

> Plaintiff is warned if his claim is challenged by the defense, or appears unfounded to the Court at a later date, it must be supported by facts presented in affidavits or, if appropriate, hearings.  If (Plaintiff's) allegations of imminent physical harm are untrue, then he must pay the whole filing fee promptly. Furthermore, if (Plaintiff) has lied in an effort to manipulate the Court, the case may be dismissed with prejudice as a sanction even if (Plaintiff) pays the full $400 filing fee. *Warren v. Wexford Health Sources, Inc.*, 2021 WL 101287, at *2 (S.D.Ill. Jan. 12, 2021)(internal citations omitted).

If Plaintiff is instead able to pay the filing fee in full within 21 days, he would not be limited to the imminent danger exception.

### III. MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff has also filed a motion asking for a Temporary Restraining Order (TRO) and Preliminary Injunction.[6]. A court may grant a TRO motion if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). This relief is warranted "to prevent a substantial risk of injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994). A TRO is an "emergency remedy" designed to "maintain the status quo until a hearing can be held on an application for a preliminary injunction." *Crue v. Aiken,* 137 F.Supp.2d 1076, 1082 (C.D.Ill. April 6, 2001).

On the other hand, a preliminary injunction can be issued only after the adverse party is given notice and an opportunity to oppose the motion. *See* Fed. R. Civ. P. 65(a)(1). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). *See also Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

The Court cannot consider a motion for emergency injunctive relief until Plaintiff has filed an amended complaint addressing the deficiencies in his current complaint. The motion is denied with leave to renew.[6]

### IV. MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff has also filed a motion for appointment of counsel. [5].  Plaintiff has no constitutional right to the appointment of counsel and the Court cannot require an attorney to accept *pro bono* appointment in a civil case.  The most the Court can do is ask for volunteer counsel.  *See Jackson v. County of McLean,* 953 F.2d 1070, 1071 (7th Cir. 1992). In considering Plaintiff's motion, the Court must ask two questions: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff

appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), *citing Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993).

Plaintiff has not demonstrated any attempt to find counsel on his own such as a list of attorneys contacted or copies of letters sent or received.  The motion is denied with leave to renew. [5].

IT IS THEREFORE ORDERED:

1) Plaintiff's complaint is dismissed as a violation of Rule 8 of the Federal Rules of Civil Procedure.

2) Plaintiff may file an amended complaint within 21 days of this order or on or before March 2, 2021.  Plaintiff is reminded can only proceed IFP for claims alleging he is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

3) If Plaintiff fails to file an amended complaint within 21 days or on or before March 2, 2021, his case will be dismissed without prejudice.

4) Plaintiff's motions for emergency injunctive relief and appointment of counsel are denied with leave to renew. [5, 6].

5) The Clerk of the Court is directed to provide Plaintiff with a blank complaint form and reset the internal merit review deadline within 30 days of this order.

ENTERED this 9th day of February, 2021.

s/ Harold A. Baker

_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE