UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| DURWYN TALLY, ) | |
|   Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 21-1047 |
| ) | |
| WEXFORD MEDICAL ) | |
| DIRECTOR, et. al., ) | |
|   Defendants ) | |

CASE MANAGEMENT ORDER

HAROLD A. BAKER, U.S. District Judge:

This cause is before the Court for consideration of Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* (IFP); Motion for Leave to File an Amended Complaint; and Motion to Dismiss Defendant Nurse Sabrina. [3, 11, 13]

I. BACKGROUND

Plaintiff's initial complaint was dismissed as a violation of Rule 8 of the Federal Rules of Civil Procedure. *See* February 9, 2021 Merit Review Order. The Court noted Plaintiff had accumulated three strikes pursuant to 28 U.S.C. §1915(g). Therefore, Plaintiff could only proceed IFP for claims alleging he was "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

Plaintiff is well-aware of the imminent danger requirement since he has filed approximately 19 lawsuits *after* obtaining his third strike.[1] The Court also notes the

---

[1] Plaintiff earned strikes in *Talley v Gongocky*, Case No. 13-1112 (11/8/13 strike); *Talley v. Reardon*, Case No. 14-2251 (2/2/15 strike); and *Talley v Williams*, Case No. 14-3291 (7/14/15 strike) in the Central District of Illinois. Since July of 2015, Plaintiff has filed *Talley v. Wexford*, Case No. 15-1073; *Talley v. Lee*, Case No. 15-1032; *Talley v Fitzgerald*, Case No. 15-1029; and *Talley v. LaFlamme*, Case No. 19-1359 in the

Seventh Circuit previously issued an order directing clerks to return unfiled any papers submitted by the Plaintiff unless he paid all outstanding fees. However, the Appellate Court's order does not apply to any suit in which the Plaintiff alleges imminent danger of serious physical injury. *See Talley v. Jennings*, Case No. 19-1204, [42],(July 28, 2020 Amended Order).

In the case before the Court, several of the allegations in Plaintiff's initial complaint pertained to past harm which could not support a claim of imminent danger. *See* February 9, 2021 Merit Review Order, p. 7; *citing Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003) ("Allegations of past harm do not suffice; the harm must be imminent or occurring at the time the complaint is filed."). The remaining claims were vague and difficult to discern. *See* February 9, 2021 Merit Review Order.

Therefore, Plaintiff was given time to file an amended complaint. The Court noted the specific deficiencies in the original complaint and admonished Plaintiff he could "ONLY proceed IFP with claims alleging imminent danger of serious physical harm which was occurring *at the time he filed his complaint.*" February 9, 2021 Merit Review Order, p. 10 (emphasis in original).

Plaintiff has now filed his Motion for Leave to File an Amended Complaint which is granted pursuant to Federal Rule of Civil Procedure 15. [11]

---

Southern District of Illinois; *Talley v. UIC*, Case No. 20-7531; *Talley v Baldwin*, 17- 6342; *Talley v. Jennings*, 17- 6299 in the Northern District of Illinois; and *Talley v Wexford*, Case No. 21-1047; *Talley v Hinton*, Case No. 21-1011; *Talley v McGorisk*, Case No. 20-1455;*Talley v Doe*, Case No. 20-1438; *Talley v Jefferies*, Case No. 20-1433; *Talley v Renzi*, Case No. 20-1159; *Talley v Jennings*, Case No. 19-1204; *Talley v Jennings*, Case No. 18-3024; *Talley v Butler*, Case No.16-3326; *Talley v Butler*, Case No. 16-3327; *Talley v Butler*, Case No. 17-3001; and *Talley v Korte*, Case No. 16-3265 in the Central District of Illinois.

II.  MERIT REVIEW

The Court is still required by 28 U.S.C. §1915A to "screen" the Plaintiff's amended complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted.  A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

Plaintiff's amended complaint identifies the same 12 Defendants at Pontiac Correctional Center including Wexford Health Sources' Medical Director John Doe; Medical Director Andrew Tilden; University of Illinois at Chicago (UIC) Glaucoma Specialists Dr. Phillips, Eye Specialist Rebecca Sawan; Wardens Teri Kennedy, Leonta Jackson, and Cox; Major Glendal French; Internal Affairs Investigator Joseph Jennings; Major Leininger; Nurse Cheryl Hansen; and Illinois Department of Corrections Director (IDOC) Director Rob Jeffries.

A. MEDICAL DEFENDANTS

Plaintiff was transferred to Pontiac Correctional Center on March 7, 2019.  At the time, Plaintiff's medical records included a referral to see a glaucoma specialist for a "painful, swollen bleb on his right eye, which grew humongous after a glaucoma surgery in 2009." (Amd. Comp, p. 9). As previously noted, a common glaucoma surgery to reduce eye pressure involves the creation of a small bubble or bleb for drainage. *See* February 9, 2021 Merit Review Order, p. 3-4.

3

Plaintiff met with UIC eye specialists on September 27, 2019.  Plaintiff first met with Defendant Sawan who checked his eyes, the bleb, his optic nerve, and eye pressure.  Plaintiff reported sharp pain in his eyes and asked for pain medication. Defendant Sawan said "that would be up to Dr. Phillips." (Amd. Comp., p. 9).  The Defendant explained the upcoming surgery and advised Plaintiff he would still have a small bleb on his eye even after the procedure.

Plaintiff then met briefly with Dr. Phillips.  The Defendant doctor did not perform a second examination of his eyes and denied Plaintiff's request for pain medication.

Defendant Sawan returned and Plaintiff asked her to obtain the records from his previous surgery.  Plaintiff also asked if he could get a second opinion.  The Defendant said he could, but it would delay the surgery planned for December of 2019.

Plaintiff previously provided copies of medical records which indicate this outside medical visit was not considered an "urgent" referral. (Comp., p. 15).  Instead, it was scheduled at Defendant Dr. Phillip's request to check on Plaintiff's eye pressure and to discuss additional treatment.  While Plaintiff was not provided with his requested pain medication, he was given artificial tears, an ointment for use at night, and a follow-up visit was requested in six weeks. (Comp., p. 15).  Dr. Tilden approved all recommendations. (Comp., p. 15).

 Plaintiff met with Defendant Dr. Tilden in January of 2020.  The Defendant Doctor noted security staff reported Plaintiff refused a medical writ for his requested second opinion.  Plaintiff told the doctor he had not refused a writ.

4

Therefore, Plaintiff next met with a facility eye doctor in February of 2020 and explained he had not received a second opinion at UIC Medical Center. Plaintiff again complained of continued eye pain. The doctor refused his request for pain medication. Plaintiff then complained his eyeglass prescription was not correct which caused migraines. The doctor examined Plaintiff's eyes for new glasses and said he would refer Plaintiff to a specialist. Nonetheless, Plaintiff says he did not receive new glasses and he was not referred to a specialist.

The only other medical provider mentioned in the complaint is Nurse Sabrina. (Amd. Comp., p. 11). Although she was not identified in the list of Defendants, Plaintiff claims she ignored repeated sick call requests and retaliated due to his previous grievances against her. Nonetheless, Plaintiff subsequently filed a motion to dismiss Defendant Nurse Sabrina with prejudice. [13]. For clarification of the record, the Court will grant Plaintiff's motion [13] and will not consider any claims against this Defendant.

The only mention of Defendants Dr. Phillips and Sawan in the amended complaint concerns the September 27, 2019 examination. Although Plaintiff believes Dr. Phillips should have conducted a thorough examination, Plaintiff also admits Defendant Sawan had just performed an examination. Plaintiff also believes Defendant Sawan should have ordered his previous medical records. It is unclear if the Defendant did obtain the records, but even if she did not, Plaintiff has not articulated a violation of his constitutional rights.

5

Finally, Plaintiff believes the Defendants should have provided pain medication. Defendant Sawan told Plaintiff any prescription would have to come from Defendant Dr. Phillips. Defendant Dr. Phillips denied the request, but Plaintiff was provided other alternatives to address his eye pain. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ("Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation."); *Wallace v. Powers*, 2009 WL 4015558, at *4 (S.D.Ill. Nov. 19, 2009)("Plaintiff's complaint asserts a mere disagreement with the Defendant…over his treatment—especially the need for pain medications to be prescribed—but such a disagreement does not rise to the level of a constitutional violation."); *Ammons v. Lemke*, 426 F.Supp.2d 866, 871 (W.D.Wis. March 31, 2006) (prisoner's disagreement with course of treatment, including denial of pain medication, did not allege constitutional violation). Furthermore, Plaintiff's amended complaint indicates he continued to see medical staff at Pontiac Correctional Center and Plaintiff had continued opportunities to request pain medication.

Plaintiff has not alleged Defendant Dr. Phillips or Defendant Sawan were deliberately indifferent to his eye condition. In addition, Plaintiff has not explained how the actions of the Defendants during a single examination in September of 2019 placed him in imminent danger when he filed his complaint one and a half years later.

Plaintiff's pleadings also demonstrate Defendant Dr. Tilden approved a follow-up visit with eye specialists. Security staff informed the Defendant Doctor that Plaintiff had refused the subsequent medical writ. When Plaintiff told Defendant Dr. Tilden he

6

had not refused the writ, Plaintiff was referred to the facility's eye doctor.   Therefore, Plaintiff has not alleged Dr. Tilden was deliberately indifferent to his serious medical condition.

Plaintiff told Eye Doctor John Doe he still had not been referred to an eye specialist, and he was having problems with his prescription eyeglasses.  Although the Defendant Doctor stated he would address Plaintiff's concerns, Plaintiff claims he has not seen an eye specialist, he has continued eye pain, and he still has migraines due to his glasses.  For the purposes of notice pleading, Plaintiff has stated a claim alleging Defendant Eye Doctor John Doe was deliberately indifferent to his medical condition when he failed to provide additional care for his eyes.  Plaintiff has also alleged imminent danger since he claims he still needed medical care for his eye problems when he filed his complaint.

The Court will dismiss Defendants Nurse Sabrina, Wexford's Medical Director, Dr. Phillips, and Defendant Sawan for failure to state a claim upon which relief can be granted. *See* 28 U.S.C. §1915A.  The Court will keep Defendant Dr. Tilden in this lawsuit only for the purpose of identifying the Doe Defendant. *See Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 555 (7th Cir. 1996). Once Defendant Eye Doctor John Doe is identified and served, the Court will dismiss Defendant Dr. Tilden.

B.  ILLINOIS DEPARTMENT OF CORRECTIONS (IDOC) DEFENDANTS

Throughout his complaint, Plaintiff alleges the IDOC Defendants failed to respond to his complaints concerning eye care.   For instance, Plaintiff says after he returned from the visit with the eye specialists in September of 2019, he complained in

7

person to Defendants Warden Kennedy and Major French. However, Plaintiff again fails to explain what he complained about or how either Defendant had reason to know the care received was deficient. Neither Defendant was responsible for providing medical care and Plaintiff admits he was not prevented from continuing to see medical staff members concerning his eye problems. *See Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011)("Non-medical defendants … can rely on the expertise of medical personnel. We have previously stated that if a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."). Finally, Plaintiff has not clearly alleged he was in imminent danger at the time he filed his complaint based on the actions of Defendants Warden Kennedy and Major French.

Plaintiff also alleges Major French suggested if Plaintiff wrote to Internal Affairs Investigator Jennies and "squashed the issues, that maybe his problems would go away." (Amd. Comp., p. 10). Plaintiff provides no further information concerning this allegation, and he has failed to clearly articulate an Eighth Amendment claim or a retaliation claim based on this vague assertion.

Plaintiff does state after his last visit with the facility eye doctor in February of 2020, he complained to Defendant Warden Jackson "about his eye problems" in person and in letters and grievances "to no avail." (Comp., p. 11). Since Plaintiff claims he has not received any further eye care, he has articulated a claim alleging Defendant Jackson was deliberately indifferent to his serious medical condition and he was in imminent danger when he filed his complaint.

C. REMAINING CLAIMS

Plaintiff also says Defendants have violated his rights pursuant to the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA). Under the ADA, "no qualified individual with a disability shall, because of that disability ... be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2006). The RA likewise prohibits discrimination against qualified individuals based on a physical or mental disability. *See* 29 U.S.C. §§ 794-94e.

Plaintiff has not identified a disability, and a claim of inadequate medical treatment is improper under the ADA. *Resel v. Fox*, 26 Fed.Appx. 572, 577 (7th Cir. 2001); *Bryan v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice."). Finally, Plaintiff has not identified a proper Defendant for his claims. *See* 42 U.S.C. §12131(1)(b); *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 670 n.2 (7th Cir. 2012)(individual capacity claims are not available; the proper defendant is the agency or its director in his official capacity). !

Plaintiff also says the Defendants "have conspired and retaliated against Plaintiff and have created an unconstitutional practice, policy and custom against plaintiff, proven by their repeated actions directed at him." (Amd. Comp., p. 11). Plaintiff's vague and conclusory allegation does not sufficiently identify a policy or practice which lead to a violation of his constitutional rights. See *Olive v. Wexford Corp.*, 494 Fed.Appx. 671, 673 (7th Cir. 2012)("To state a claim against Correct Care Solutions, the plaintiff must therefore "identify [a] concrete policy" or custom that caused the constitutional

violation; he cannot rely solely on a conclusory policy allegation."); *see also Bingham v. Baker*, 2016 WL 8711599, at *4 (N.D.Ill. April 15, 2016)("conclusory policy allegation is not supported by a more specific allegation identifying a discrete policy that is causally linked to the deficiencies and delays in the plaintiff's medical treatment.").

In addition, Plaintiff has not articulated a specific retaliation claim beyond his conclusory assertion.

Plaintiff also says he is suing for "state law negligence" and unspecified "breach of duties." (Amd. Comp., p. 1). Plaintiff's amended complaint does not clearly articulate any other claims. For example, if Plaintiff was attempting to claim the state law tort of medical malpractice, his complaint is not sufficient. Illinois law requires any Plaintiff who is seeking damages for medical malpractice to file an affidavit with the complaint providing required information. *See* 735 Ill. Comp. Stat. § 5/2-622(a).

Finally, the Plaintiff is asking for "not less than $1.5 million dollars" in damages, to "permanently revoke the medical licenses of medical defendants." (Amd. Comp., p. 12). Plaintiff is advised this Court does not have the authority to revoke a medical license. Plaintiff also states if there is "further harm during any future proceedings… state and federal criminal charges of assault and battery and attempted murder be brought against medial defendants." (Amd. Comp., p. 12). Again, this Court cannot initiate criminal charges. Furthermore, Plaintiff would need to file a separate lawsuit to address any future issues.

### III. CONCLUSION

Plaintiff's Motion to Dismiss Defendant Nurse Sabrina is granted. [13]. Plaintiff did not name the nurse as a Defendant and the Court will not consider any allegations against her in the amended complaint. Plaintiff's motion for leave to file an amended complaint and motion to proceed IFP are both granted. [3, 11].

Plaintiff may proceed with his claim alleging Defendants Dr. Eye Doctor John Doe and Warden Jackson were deliberately indifferent to Plaintiff's eye condition beginning in February of 2020 when he was denied additional eye care and eyeglasses. The claims are against the Defendants in their individual capacities. Defendant Dr. Tilden will remain in the case only for identification of the Doe Defendant, all other intended Defendants are dismissed.

If appropriate, Defendants may choose to contest Plaintiff's claim of imminent danger pursuant to §1915(g). While the Court must accept an unchallenged assertion, "when a defendant contests a plaintiff's claims of imminent danger, a court must act to resolve the conflict." *Taylor v. Watkins*, 623 F.3d 483, 485 (7th Cir. 2010)(court may determine credibility of imminent danger claim by relying on affidavits or depositions, or if necessary, holding a hearing).

IT IS THEREFORE ORDERED:

1) Pursuant to its merit review of the amended complaint under 28 U.S.C. § 1915A, the Court finds the Plaintiff alleges Defendants Pontiac Eye Doctor John Doe and Warden Jackson were deliberately indifferent to Plaintiff's eye condition beginning in February of 2020 when he was denied additional medical care or treatment for eye pain, an eye bleb, and a correct eyeglasses prescription.

Defendant Dr. Tilden will also remain in the case only for purposes of identifying the Doe Defendant. The surviving claim is stated against the Defendants in their individual capacities only. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

2) This case is now in the process of service.  Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, in order to give Defendants notice and an opportunity to respond to those motions.  Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature.  Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.

3) The Court will attempt service on Defendants by mailing each Defendant a waiver of service.  Defendants have 60 days from service to file an Answer.  If Defendants have not filed Answers or appeared through counsel within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of service.  After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

4) With respect to a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service.  Documentation of forwarding addresses shall be retained

only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

5) Defendants shall file an answer within 60 days of the date the waiver is sent by the Clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until a motion is filed by Defendants. Therefore, no response to the answer is necessary or will be considered.

6) Once counsel has appeared for a Defendant, Plaintiff need not send copies of his filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send a notice of electronic filing to defense counsel. The notice of electronic filing shall constitute service on Defendants pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

7) Counsel for Defendants is hereby granted leave to depose Plaintiff at his place of confinement. Counsel for Defendants shall arrange the time for the deposition.

8) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

9) Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' Counsel.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO:**

**1) Grant Plaintiff's motion for leave to file an amended complaint, [11]; 2) Grant Plaintiff's motion to dismiss Defendant Nurse Sabrina, [13]; 3) Grant Plaintiff's motion to proceed IFP, [3]; 4) Dismiss all Defendants except Dr. Tilden, Eye Doctor John Doe, and Defendant Jackson for failure to state a claim upon which relief can be granted pursuant to by 28 U.S.C. §1915A; 5) Attempt service on Defendants pursuant to the standard procedures; 6) Set an internal court deadline 60 days from the entry of this order for the Court to check on the status of service and enter scheduling deadlines; and 7) enter the Court's standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

ENTERED this 28th day of July, 2021.

Harold A. Baker
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE
